UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-824(DSD/FLN)

Residential Funding Corporation,
a Delaware corporation,

Plaintiff,

v.

**ORDER**

General Mortgage Corporation, a
Michigan corporation, Joseph
Shalla and Kristopher Dreyer,

Defendants.

William R. Stoeri, Esq., Thomas L. Nuss, Esq. and Dorsey & Whitney, Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, counsel for plaintiff.

Boyd H. Ratchye, Esq., Ann S. Grayson, Esq. and Bassford, Lockhart, Truesdell & Briggs, 3550 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court on plaintiff's motion for summary judgment. Based on a review of the file, record, and proceedings herein and for the reasons stated, the court grants plaintiff's motion.

## BACKGROUND

Plaintiff Residential Funding Corporation ("RFC") brings this motion for summary judgment against defendants General Mortgage Corporation ("GMC"), Joseph Shalla and Kristopher Dreyer.

MAR 2 2001

FILED
FRANCIS E. DOSAL, CLERK
Judgment Ent'd MAR 2 2001
Deputy Clerk's Initials

Plaintiff initiated this action asserting that defendants are in breach of contract.

GMC and RFC entered into two distinct contracts, one involving money advanced by RFC to GMC, and another involving the sale of residential mortgages by GMC to RFC. Defendants Shalla and Dreyer individually guaranteed repayment of the first contract. Plaintiff contends that the terms of the respective contracts are unambiguous and clearly set forth the parties' respective obligations. Moreover, plaintiff asserts that the undisputed facts demonstrate that defendant GMC has breached both contracts, and that defendants Shalla and Dreyer have failed to fulfill their obligations as guarantors under the first contract.[1]

On or about November 13, 1998, the parties entered into a warehouse lending agreement (the "warehousing contract"). Under this contract, RFC agreed to extend a line of credit to GMC, assuming certain delineated conditions were met, and GMC agreed to pay back all funds advanced plus interest and fees. This contract included a number of provisions regarding GMC's obligations to

[1] On or about November 13, 1998, plaintiff entered into two separate and independent guaranty agreements with defendants Shalla and Dreyer. The terms of each agreement were identical. Each guarantor gave an unconditional guarantee that he would assume liability for costs in amounts due that GMC did not pay pursuant to the warehousing contract. Plaintiff alleges that each guarantor is independently liable for the amounts arising from GMC's breach. Defendants Shalla and Dreyer did not file individual responsive papers nor have they individually contested plaintiff's motion for summary judgment.

repay all amounts owed to RFC. Relevant provisions of the contract enumerated a number of events that would constitute a default on the part of GMC. One provision specifically provided that default would occur if GMC failed to pay any amounts owing to RFC when due.

Pursuant to the warehousing contract, RFC advanced GMC funds. Under the agreement, GMC was obligated to repay the advances, plus interest and fees for mortgage loans in the warehouse more than thirty days. On December 13, 1999, RFC demanded payment of certain funds reflecting advances exceeding thirty days. Neither party disputes that GMC failed to repay these advances. As a result of GMC's failure to repay, plaintiff exercised an option to terminate the warehousing contract on or about December 27, 1999, and exercised an additional option to demand payment in full of all amounts outstanding under the contract. GMC failed to pay the amounts due. By letter dated February 21, 2000, plaintiff made a final demand for payment. GMC again failed to pay the outstanding amounts in full.

The second matter in dispute arises from a contract entered on or about August 12, 1998, between RFC and GMC. The parties agree that this "correspondent client contract" governed the sale and servicing of mortgage loans sold by defendant to plaintiff. The contract expressly described and detailed the conditions on which plaintiff would purchase the mortgages. This contract also expressly delineated defendant's obligations to plaintiff.

Under the terms of this contract, defendant GMC sold to plaintiff on or about December 15, 1998, a loan made to a borrower, Mr. Larry Kennebrew (the "Kennebrew loan"). The loan appraisal done in connection with the Kennebrew loan represented the value of the loan property at $63,000. A review appraisal requested by plaintiff determined that the property's market value at the time the loan was made was approximately $50,000. The parties do not dispute that, based upon the review appraisal, plaintiff determined that the Kennebrew loan did not comply with the provisions of the correspondent client contract and requested that defendant repurchase the loan as provided by the contract. The parties further agree that defendant has failed to repurchase the loan.

Plaintiff contends that summary judgment is particularly warranted in this case given the unambiguous language of both of the contracts in dispute and considering that there are no material facts in dispute. Defendant counters that ambiguities exist in both contracts sufficient to preclude summary judgment. Defendant also contends that summary judgment is inappropriate on the Kennebrew loan because the discrepancy in the appraisal value creates a material issue of fact sufficient to undermine plaintiff's motion. After a careful review of the record, file, and proceedings herein, the court concludes that there are no genuine issues of material fact in dispute. Thus, summary judgment is appropriate in this matter.

**DISCUSSION**

Under Rule 56, Federal Rules of Civil Procedure, summary judgment is appropriate if the movant has shown that "there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to avoid summary judgment, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252. On a motion for summary

judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250.

Summary judgment is especially appropriate in resolving disputes involving the interpretation of unambiguous contracts. See Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir. 1981) (granting summary judgment for insured on contractual duty to defend). Whether or not a contract term is ambiguous is a question of law. Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979). A contract term is ambiguous if it is reasonably susceptible to more than one construction. Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979). If a contract term is determined to be unambiguous, its interpretation is a question of law. Cooper v. Lakewood Eng'g & Mfg. Co., 874 F. Supp. 947, 953 (D. Minn. 1994). In other words, when a contract is unambiguous, it is appropriately before the court for construction. See Lakeland Tool & Eng'g, Inc. v. Thermo-Serve, Inc., 916 F.2d 476, 481 (8th Cir. 1990). See also, Atkins v. Hartford Cas. Ins. Co., 801 F.2d 346, 348 (8th Cir. 1986) ("[i]f the court determines that there is no ambiguity, then the ... interpretation of the contract is for the court to determine, as garnered from the four corners of the document") (citations omitted).

After a careful review, the court finds that the terms of the two contracts at issue are unambiguous. Furthermore, upon

interpretation of the contracts in light of the undisputed facts, the court concludes that plaintiff is entitled to summary judgment.

**A. The Warehousing Contract**

The warehousing contract unambiguously sets forth the responsibilities of the parties. Plaintiff agreed to advance funds to defendant GMC under the conditions set forth in the contract, and defendant agreed to repay the advances as set forth under the specific terms of the contract. Failure to repay any amounts due constituted an event of default under the express terms of the contract. Furthermore, the court concludes that the contract unambiguously proscribes that in the event of default, plaintiff may terminate its commitment to make advances to defendant and may declare all of defendant's obligations immediately due.

Defendant does not dispute the existence of the agreement nor contests the money owed. Rather, defendant attempts to argue that there are ambiguities in the contract that preclude summary judgment. Defendant, however, implicitly concedes that this dispute is ripe for resolution upon the court's interpretation of the terms of the warehousing contract. (Def.'s Br. at 9.) Moreover, the court notes that defendant primarily relies upon the subsequent correspondence between the parties, not the contract itself, as the basis for any alleged ambiguities.

After a careful review of the relevant provisions of the contract, the court determines that the warehousing contract terms

are clear and unambiguous. No reasonable person could conclude that confusion exists with respect to the definition of key words, terms, or phrases within the contract. The court therefore is not persuaded by defendant's argument that the contract is ambiguous. Since no ambiguity exists, and since defendant does not dispute that it received financial advances pursuant to the contract and has failed to repay these advances despite plaintiff's repeated demands, plaintiff is entitled summary judgment on the warehousing contract.

**B. The Kennebrew Loan**

Defendant also does not directly dispute that it is obligated to repurchase loans sold to plaintiff that fail to comply with the terms of the correspondent client contract. Defendant instead argues that summary judgment is inappropriate here on two bases, first, a discrepancy in the appraisal value purportedly creates a genuine issue of material fact, and second, the terms of the correspondent client contract are ambiguous. The court is not persuaded by either argument.

Contrary to defendant's argument, any discrepancy in appraisal value does not create a material issue of factual dispute sufficient to preclude summary judgment given plaintiff's clear right to request repurchase under the specific discretionary terms of § 8(A)(2) of the contract. Under the unambiguous terms of this section, "the option to accept or repurchase of any loan is at the

sole discretion of [plaintiff]." (Dallman Aff. ¶ 6 and Ex. D.) The court thus concludes that the contract unambiguously reflects that defendant expressly agreed to repurchase the Kennebrew loan upon plaintiff's request.[2] The court also finds that the terms and language of this contract are clear and unambiguous. Thus, since defendant does not dispute that it has failed to repurchase the Kennebrew loan upon request, plaintiff is entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 2, 2001

David S. Doty, Judge
United States District Court

[2] The court further notes that the record reflects that the review appraisal was conducted after both plaintiff's inspection of the subject property and review of the original appraisal report. The review appraiser discovered that the comparable houses used in the original appraisal to estimate the value of the subject property were unreliable. The review appraisal then determined that the actual value of the subject property at the time that it was sold to plaintiff was less than the value represented by defendant. Thus, the review appraisal revealed that the information provided at the time defendant sold the loan was not complete and accurate, thereby reflecting that an adequate factual basis also existed to support plaintiff's decision to exercise the contract's repurchase obligation.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd